IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ROGER PERRIN,                          )
    Plaintiff,                         )
                                       )
    v.                                 )          CIVIL NO. 3:12cv741 (HEH)
                                       )
CAROLYN W. COLVIN,                     )
Commissioner of Social Security,       )
    Defendant.                         )
_____)

## REPORT AND RECOMMENDATION

Roger Perrin is 22 years old and received supplemental security income ("SSI") as a

minor.  Upon reaching the age of 18, Plaintiff's disability status was reviewed under the adult

standard of review, and on October 5, 2009, it was determined that Plaintiff was no longer

disabled.  Plaintiff appealed based on his history of attention deficit hyperactivity disorder

("ADHD") symptoms and borderline intellectual functioning.  Plaintiff's claim was presented to

an ALJ, who denied Plaintiff's request for benefits.  The Appeals Council subsequently denied

Plaintiff's request for review on August 24, 2012, rendering the ALJ's decision a final decision

of the Commissioner of Social Security.  Plaintiff then filed this action for judicial review on

October 19, 2012.

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Roger Perrin, seeks judicial

review pursuant to 42 U.S.C. § 405(g) of the final decision of the Commissioner denying his

_____

[1]    The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc.
R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal
identifiers such as Plaintiff's social security number, the names of any minor children, dates of

applications for Supplemental Security Income payments ("SSI"). The Commissioner's final

decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not

disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, the Court recommends that Plaintiff's Motion for Summary

Judgment (ECF No. 10) be DENIED; that Defendant's Motion for Summary Judgment (ECF No.

12) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

Plaintiff challenges whether the ALJ erred in assigning the opinion of the treating

physicians less than controlling weight, whether the ALJ correctly considered all of the evidence,

whether the ALJ properly determined Plaintiff's credibility and whether the ALJ fully developed

the record. Therefore, Plaintiff's educational, work and medical history, a non-treating state

agency physician's opinion, Plaintiff's reported activities of daily living, Plaintiff's hearing

testimony, Plaintiff's mother's testimony, a third party functioning report and a vocational

expert's testimony are summarized below.

### A. Plaintiff's Educational History

Plaintiff attended an alternative school until he dropped out halfway through 12th grade.

(R. at 389.) He attended self-contained classes and would have received a modified standard

diploma. (R. at 361-62, 139.) The high school worked to accommodate him, allowing him to

take frequent breaks and use audio versions of the exams to mitigate reading difficulties. (R. at

363.) He demonstrated difficulty reading, often asking for help reading during class. (R. at

364.) Plaintiff believed that he did not need the specialized education program. (R. at 364.)

---

birth (except for year of birth), and any financial account numbers from its consideration of
Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to
only the extent necessary to properly analyze the case.

On November 11, 2008, the school decided to stop funding Plaintiff's specialized education program, because Plaintiff failed to attend class on a regular basis. (R. at 361.) His records also note that Plaintiff did not want to complete his work or participate in class. (R. at 364.) As part of a vocational program, Plaintiff worked for a car wash for three months before he walked off the job site. (R. at 133.) He was not open to new jobs or new situations. (R. at 364.)

B. Plaintiff's Testimony

On March 29, 2011, Plaintiff testified at a hearing in front of the ALJ. (R. at. 42.) Plaintiff lived with his mother and three younger siblings. (R at 46-47.) He suffered lower back and leg pain, but was not taking medication to treat the issue. (R. at 48, 49.) Plaintiff also had a history of attention deficit disorder, but had not seen anyone for treatment since 2008 or 2009. (R. at 51.) He attended Special Education classes before he dropped out of school in the 12th grade. (R. at 49.)

During the day, Plaintiff cleaned his mother's house. (R. at 52.) He also watched television shows like Everybody Hates Chris and walked to his friend's house to play video games three times a week. (R. at 53, 55.) Plaintiff went to the movies with his cousin on a weekly basis. (R. at 54.) Before his back pain stopped him, Plaintiff played basketball. (R. at 56.) Plaintiff could walk a block and can stand for five or ten minutes. (R. at 49.) While playing basketball, Plaintiff sometimes got into fights. (R. at 49.) Plaintiff suffered from anger problems, which occurred when he got confused or did not understand what was happening. (R. at 60.)

3

C. Plaintiff's Mother's Testimony

On March 29, 2011, Plaintiff's mother, Selina Perrin, testified at a hearing in front of the ALJ. (R. at. 61.) She testified that she constantly had to tell Plaintiff what to do. (R. at 62.) Plaintiff became angry when his mother asked him to do things, but would calm down when he had to ask his mother for something. (R. at 64-65.) Plaintiff's temper also flared up when he had to read and he reacted by walking out of school or getting angry and kicking. (R. at 63.) Ms. Perrin tried to make Plaintiff get a job, but her efforts were unsuccessful. (R. at 63.) Plaintiff's only job was at a car wash through a school program. (R. at 63.)

D. Function Report

On May 26, 2009, Plaintiff's mother, Selena Perrin, completed a Function Report for Plaintiff. (R. at 285-92.) Ms. Perrin indicated that Plaintiff has always been affected by his learning disabilities. (R. at 286.) These disabilities manifest in Plaintiff's inability to pay attention for more than a few minutes and follow instructions. (R. at 290.) Plaintiff could not handle his finances, because he could not read or write. (R. at 289.)

Plaintiff spent his day eating, playing games, watching television and walking around. (R. at 285.) He also helped out around the house by making his bed, taking out the trash and sweeping. (R. at 285.) Ms. Perrin sometimes needed to remind Plaintiff to bathe and brush his teeth, and Plaintiff sometimes required that Ms. Perrin instruct him on what to wear. (R. at 286.) However, Plaintiff had no difficulty caring for his hair, shaving, feeding himself or using the toilet. (R. at 286.) Plaintiff did not prepare his own meals, because he could not cook. (R. at 287.)

Plaintiff's hobbies included basketball and watching television daily. (R. at 289.) Plaintiff socialized on a daily basis by talking and playing games. (R. at 289.) Plaintiff would

go outside and walk around regularly. (R. at 289.) Plaintiff did not drive, but he rode in cars with people and walked around without supervision. (R. at 289.) Plaintiff experienced difficulty getting along with others when "things don't go the way he wants." (R. at 290.)

Plaintiff's condition affected his ability to remember, complete tasks, understand, follow instructions and get along with others. (R. at 290.) However, Plaintiff had no problems concentrating, lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, climbing stairs, seeing or using his hands. (R. at 290.) He had difficulty following written instructions and would not always follow oral instructions. (R. at 290.) He could pay attention for a few minutes. (R. at 290.) Plaintiff had trouble getting along with authority figures, would get upset by stress and could not handle changes in his routine. (R. at 291.)

E. Psychology Report

Dr. Therese M. May completed an examination on September 16, 2009. (R. at 388.) Dr. May noted that Plaintiff dropped out of 12th grade in an alternative school and used to take Adderall. (R. at 388.) However, Plaintiff no longer took the medication. (R. at 388.) Plaintiff maintained a third grade reading level. (R. at 389.)

During the exam, Plaintiff appeared alert and oriented and understood the purpose of the examination. (R. at 389.) His processes were slow. (R. at 389.) She noted that Plaintiff's short-term memory was below average, intermediate memory remained intact and Plaintiff's long-term memory appeared commensurate with his cognitive abilities. (R. at 389.) Dr. May noted that some of Plaintiff's answers were "suspiciously approximate to correct answer;" for instance, when asked how many seconds were in a minute, Plaintiff responded 59. (R. at 389).

Dr. May concluded that Plaintiff was an immature young man with a history of developmental and behavior problems in need of structure and a vocational program. (R. at

5

392.) While limited by Plaintiff's minimal cooperation, Dr. May's testing found that Plaintiff's

intellectual functioning fell in the borderline range with a Full Scale IQ of 67. (R. at 391.) He

could understand simple, repetitive tasks. (R. at 391.) Plaintiff had a moderate cognitive

impairment, impaired impulse control and attention, and concentration issues. (R. at 392.) His

ability to interact with supervisors, co-workers or the public appeared erratic, but he maintained a

peer network. (R. at 392.) Dr. May opined that Plaintiff had a GAF of 55.[2] (R. at 392.) Dr.

May determined that Plaintiff would likely decompensate under the stressors of competitive

work and would require a structured, supportive work environment. (R. at 392.)

F. Non-Treating State Agency Physician's Opinion

On October 5, 2009, the non-treating State Agency Physician, Dr. Nicole Sampson,

completed a review of Plaintiff's records. (R. at 395.) Dr. Sampson opined that Plaintiff

maintained moderate limitations in his ability to: (1) understand and remember detailed

instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for

extended periods of times, (4) sustain ordinary routine without special supervision, (5) work in

coordination or proximity to others, (6) interact appropriately with the general public, (7) accept

instructions and respond appropriately to criticism from supervisors, (8) get along with co-

workers or peers without distracting them or exhibiting behavioral extremes, and (9) set realistic

goals or make plans independently of others. (R. at 395-96.) Plaintiff was not significantly

limited in his ability to: (1) remember locations and work-like procedures, (2) understand and

remember very short, simple instructions, (3) carry out very short and simple instructions, (4)

perform activities within a schedule, maintain regular attendance and be punctual within

---

[2]     A GAF of 55 falls within a range of "moderate symptoms," characterized by "flat affect
and circumstantial speech or occasional panic attacks" or "moderate difficulty in social,
occupational, or school functioning," characterized by having "few friends" or experiencing
"conflicts with peers or co-workers." DSM-IV-TR 34 (American Psychiatric Association 2000).

customary tolerances, (5) make work-related decisions, (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (7) ask simple questions or request assistance, (8) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, (9) respond appropriately to changes in the work setting, (10) be aware of normal hazards and take appropriate precautions, and (11) travel in unfamiliar places or use public transportation. (R. at 396.) Dr. Sampson concluded that Plaintiff was able to meet the demands of simple, routine work with limited social interaction. (R. at 398.)

G. Vocational Expert Testimony

An impartial Vocation Expert ("VE") testified during the hearing on March 29, 2011. (R. at 67.) The VE asserted that Plaintiff had no prior past, relevant work, except for Plaintiff's time as a car wash attendant, which constituted light and unskilled work. (R. at 68.) The ALJ asked the VE if jobs existed in the national economy for a hypothetical individual with Plaintiff's vocational profile that would not require reading or writing of instructions, math calculations, close supervision, or direct face-to-face interaction with the general public, but would not preclude occasional face-to-face interaction with co-workers and the general public. (R. at 68-69.) The VE advised that the hypothetical person could work a number of medium unskilled jobs like store laborer of which there were 100,000 positions nationally and 4,000 positions regionally. (R. at 69.) The VE also determined that such a person could work unskilled light jobs of which there were 50,000 nationally and 800 regionally, and the VE advised that the hypothetical person could work in a sedentary unskilled position of which there were 70,000 nationally and 1,250 regionally. (R. at 69.)

7

## II. PROCEDURAL HISTORY

Plaintiff first filed an application for children's disabilities on September 14, 2001, claiming disability due to ADHD and Borderline IQ, with an alleged onset date of September 1, 2001. (R. at 74.) The Commissioner ruled that Plaintiff was disabled under the childhood disability standard and that ruling was re-certified in 2005 and 2007. (R. at 74-102.) Plaintiff's claim for SSI was automatically re-evaluated using the adult standard of review for a new applicant upon his 18th birthday. (R. at 26-27, 203.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration. (R. at 103-105, 126-136.) On May 29, 2009, Plaintiff, represented by counsel, testified before an ALJ. (R. at 40-73.) On April 28, 2011, the ALJ denied Plaintiff's application, finding that Plaintiff was not disabled under the Act, because based on his age, education, work experience and residual functional capacity, there are jobs that he could perform that exist in significant numbers in the national economy. (R. at 33.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1.)

## III. QUESTIONS PRESENTED

1.      Does substantial evidence support the ALJ's determination to afford less than controlling weight to Plaintiff's treating physician?

2.      Did the ALJ err by failing to consider Plaintiff's school records?

3.      Does substantial evidence support the ALJ's determination regarding Plaintiff's credibility?

4.      Did the ALJ err by failing to consult another consulting examiner?

IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence in the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, is less than a preponderance and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Id.*; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation and internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to

---

[3]    SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

last, for twelve months or result in death, it constitutes a qualifying impairment, and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's RFC[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from performing his past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472.

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's

---

[4]      Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5]      RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.*

impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

### A. The ALJ's Opinion

The ALJ skipped step one, because it is not used for determining disability at age 18. 20 CFR 416.987(b); (R. at 28). At steps two and three, the ALJ found that Plaintiff had the severe impairments of residuals of borderline intellectual functioning and history of attention deficit hyperactivity disorder, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 28-29.) The ALJ next determined that Plaintiff had the RFC to perform work at all exertional levels, but was limited to unskilled work that does not require math calculations, reading or writing of instructions or reports, close supervision and no more than intermittent face-to-face interaction with the general public or more than occasional interactions with co-workers. (R. at 30.)

The ALJ then determined at step four that Plaintiff had no relevant past work experience. (R. at 32.) At step five, after considering Plaintiff's age, education, work experience, RFC after consulting a VE, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. at 38.) Specifically, the ALJ found that Plaintiff, could work as a store laborer, laundry sorter, routing clerk, general housekeeping, document preparer and bench

assembler. (R. at 33.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 34.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J. "Pl.'s Mot." at 1.) Plaintiff argues that: (1) the ALJ improperly assigned less than controlling weight to the opinion of Plaintiff's treating physician, (2) the ALJ erred by failing to consider Plaintiff's school records, (3) substantial evidence does not support the ALJ's determination regarding Plaintiff's credibility, and (4) the ALJ failed to develop a complete record by failing to consult another consulting examiner. (Pl.'s Mot. at 11-25.) Defendant contends that the ALJ's decision is supported by substantial evidence and that the ALJ used the correct legal standard. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof "Def.'s Mem." at 2.)

B. The ALJ did not err in assigning Plaintiff's treating physician's opinion less than controlling weight.

Plaintiff argues that the ALJ erred in affording Plaintiff's treating physician's opinion less than controlling weight. (Pl's Mot. at 11.) Defendant responds that substantial evidence supports the ALJ's determination.

The ALJ assigned the physician's opinion less than controlling weight, because neither the objective findings nor the claimant's admitted activities supported his speculation with regard to the likelihood of decompensating, perform a sustained basis or the need for supportive work environment. (R. at 32.) The ALJ accepted Dr. May's findings when they were consistent with the RFC for unskilled work with limited social interaction. (R. at 32.) The ALJ afforded controlling weight to the state agency medical consultant, Dr. Sampson, because her report was generally consistent with the longitudinal record and Plaintiff's daily activities. (R. at 32.)

13

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, *e.g.*, when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Dr. May concluded that Plaintiff was an immature young man with a history of developmental and behavior problems in need of structure and a vocational program. (R. at 392.) He could understand simple, repetitive tasks. (R. at 391.) Plaintiff had a moderate cognitive impairment, impaired impulse control, and attention and concentration issues. (R. at

392.) His ability to interact with supervisors, co-workers or the public appeared erratic. (R. at 392.) Dr. May opined that Plaintiff maintained a GAF of 55. (R. at 392.) Dr. May determined that Plaintiff would likely decompensate under the stressors of competitive work and would require a structured, supportive work environment. (R. at 392.)

Dr. May's opinion was inconsistent with Plaintiff's activities of daily living, testimony and treatment history. At the time of the hearing, Plaintiff received no treatment for his mental disabilities. (R at 49.) He took Adderall in the past to helped control his ADHD but, according to Plaintiff's mother, the doctors decided to wean him off the medication. (R. at 65.) Plaintiff interacted with the community and help out around the house. (R. at 52.) When asked, Plaintiff helped with the household chores like taking out the trash and cleaning. (R. at 52.) During his free time, Plaintiff walked around his neighborhood unsupervised, visited his friend's house, went to the movies with his cousin, and played basketball until he had to stop a month before the hearing, because of back problems. (R. at 54-57.) Plaintiff also watched television shows like Everybody Hates Chris and played computer games like Black Ops II. (R. at 53, 55.) Therefore, substantial evidence supports the ALJ's determination to afford less than controlling weight to Dr. May's opinion.

C. The ALJ did not err by failing to apply the medical improvement standard and ALJ properly considered the evidence.

Plaintiff argues that the ALJ erred in failing to consider evidence about the nature and severity of Plaintiff's medical condition before redetermination in October 2009. (Pl.'s Mot. at 24.) Specifically, Plaintiff argues the ALJ should have examined Plaintiff's school records, because they were indicative of his inability to concentrate and interact with others. (Pl.'s Mot. at 25.) Plaintiff cites Plaintiff's need for frequent breaks in class, and that the ALJ did not consider Plaintiff's history with special education. (Pl.'s Mot. at 25.) Defendant contends that

15

such consideration is not required because, the medical improvement standard does not apply and further, the ALJ did inquire about Plaintiff's educational background during the hearing. (Def.'s Mot. at 16.)

Under the SSA regulations, decisions of continuing disability are reviewed periodically to determine whether the disability is ongoing by determining: (1) whether the claimant is engaging in substantial activity; (2) whether the impairments are severe; (3) whether the claimant has improved medically; and (4) whether that improvement was related to claimant's ability to perform work. 20 C.F.R. § 404.1594(f). But this standard is not used for individuals who received supplemental security income benefits as minors for the month preceding the month in which they attain age 18; those individuals must have their disability re-determined under the standard used for new applicants and not the medical improvement standard used for adults undergoing a periodic review of their condition. 42 U.S.C §1614(a)(3)(H).

Plaintiff admits that the ALJ correctly applied the standard for review and concedes that the medical improvement standard does not apply. (Pl.'s Mem. at 24.) However, Plaintiff argues, without any support for his assertions, that Plaintiff's school records from before re-determination are relevant and should have been considered during the ALJ's decision-making. (Pl.'s Mem. at 25.) Because Plaintiff agrees that there is no legal basis for such consideration, the ALJ did not err in failing to apply the medial improvement standard.

Although, admittedly, no basis exists to require the ALJ to look to Plaintiff's previous records including his school records, because the medical improvement standard does not apply, the ALJ considered Plaintiff's educational background. (R. at 30.) During the hearing the ALJ asked if Plaintiff received special education. (R. at 47.) The ALJ also asked about the vocational training that Plaintiff received while in school. (R. at 58.) Further, Plaintiff's

16

mother's testified about Plaintiff's reading level and Plaintiff's tendency to get upset and walk out of class when teachers tried to help him improve his reading skills.  (R. at 63.)  As such, the ALJ applied the correct legal standard and properly examined Plaintiff's records.

  D. The ALJ did not err in assessing Plaintiff's credibility.

  Plaintiff argues that the ALJ erred when assessing Plaintiff's credibility, because the ALJ's determination was not supported by either Dr. May's objective findings or Plaintiff's activities of daily living.  (Pl.'s Mot. at 23.)  Defendant responds that the medical evidence, treatment history, and Plaintiff's daily activities provide substantial evidence to support the ALJ's credibility determination.  (Def.'s Mem. at 16.)

  After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.  In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis.  *Craig v. Charter*, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a).  The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms.  *Id.*; SSR 96-7p, at 1-3.  The ALJ must consider all of the medical evidence in the record.  *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on all of the relevant evidence in the case record").  If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence

of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has held that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

The ALJ followed the two-step analytical process. In the first step, the ALJ found that Plaintiff's mental impairments reasonably could produce the individual's pain or other related symptoms. (R. at 31.) After completing the second step, the ALJ found that the objective findings and Plaintiff's daily activities did not support his speculation in regards to his ability to

18

perform a sustained basis, likelihood of decompensating or the need for a supportive work environment. (R. at 32.)

Plaintiff argues that the ALJ failed to present sufficient evidence to support his position. (Pl.'s Mot. at 22.) To the contrary, the ALJ provided a lengthy analysis of the record to support his determination regarding inconsistencies in Plaintiff's alleged severity of his condition and his activities of daily living, objective findings and testimony. (R. at 31-32.) Further, substantial evidence supports the ALJ's determination regarding Plaintiff's credibility. A review of Plaintiff's medical history showed that Plaintiff was not undergoing treatment for his mental conditions at the time of the hearing and he had no history of emergency medical treatment. (R. at 65.) Dr. May noted in her assessment that Plaintiff gave "several suspiciously approximate answers" during the examination, and while Plaintiff's persistence and motivation for testing were fair, he did not appear overly concerned about his performance. (R. at 389-390.)

Additionally, Dr. Sampson opined that Plaintiff was not significantly limited in his ability to (1) remember locations and work-like procedures, (2) understand and remember very short simple instructions, (3) carry our very short and simple instructions, (4) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, (5) make work-related decisions, (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (7) ask simple questions or request assistance, (8) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, (9) respond appropriately to changes in the work setting, (10) be aware of normal hazards and take appropriate precautions, and (11) travel in unfamiliar places or use public

transportation. (R. at 396.) Dr. Sampson concluded that Plaintiff was able to meet the demands of simple routine work with limited social interaction. (R. at 398.)

Finally, Plaintiff's daily activities support the ALJ's credibility determination. Plaintiff assisted with household chores like cleaning or taking out the trash. (R. at 53, 287.) In his free time, Plaintiff played games at his friend's house, played computer games, watched television shows like Everybody Hates Chris, and went to the movies with his cousin. (R. at 53-55.) Therefore, substantial evidence supports the ALJ's credibility determination.

E. The ALJ fulfilled his duty to develop the record.

Plaintiff asserts that the ALJ should have sent Plaintiff to another consultative examination ("CE") to properly create a longitudinal record. (Pl.'s Mot. at 26.) Plaintiff contends that, especially in cases involving mental impairments, the ALJ has an increased duty to develop a longitudinal record. (Pl.'s Mot. at 26.) Defendant responds that the ALJ properly developed the record by ordering the consultative examination performed by Dr. May, and if Plaintiff thought additional evidence was necessary to prove his case, it was his duty to produce the evidence. (Def.'s Mem. at 19.)

While the Commissioner has the duty to develop the record, he is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994) ("[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.") Ultimately, the claimant has the burden of proof and bears the risk of nonpersuasion. *Aytch v. Astrue*, 686 F. Supp. 2d 590, 599 (E.D.N.C. 2010.) The ALJ properly ordered one CE from Dr. May, upon the completion of that CE the ALJ felt he had enough information to make a determination. 20 C.F.R. § 416.919a(a) (If the ALJ cannot obtain the

information necessary to make a determination from the claimant's medical records, he may purchase a consultative examination.)

Here, the ALJ developed the record through the use of a CE when Dr. May conducted her examination of Plaintiff. (R. at 388.) Further, the ALJ had enough information to base his decision, because substantial evidence supports the ALJ's determination. The ALJ determined that Plaintiff had the RFC to perform work at all exertional levels, but was limited to unskilled work that does not require math calculations, reading or writing of instructions or reports, close supervision and no more than intermittent face-to-face interaction with the general public or more than occasional interactions with co-workers. (R. at 30.)

While Plaintiff could not read, (R. at 57), he helped out around the house by making his bed, taking out the trash and sweeping. (R. at 285.) Plaintiff socialized on a daily basis by talking and playing games. (R. at 53, 55, 289.) Plaintiff would go outside and walk around regularly. (R. at 289.) Plaintiff did not drive, but he rode in cars with people and walked around, without supervision, on a daily basis. (R. at 289.) Plaintiff had no problem concentrating, lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, climbing stairs, seeing or using his hands. (R. at 290.)

Further, Dr. Sampson opined that Plaintiff was not significantly limited in his ability to (1) remember locations and work-like procedures, (2) understand and remember very short simple instructions, (3) carry out very short and simple instructions, (4) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, (5) make work-related decisions, (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (7) ask simple questions or request assistance,

21

(8) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, (9) respond appropriately to changes in the work setting, (10) be aware of normal hazards and take appropriate precautions and (11) travel in unfamiliar places or use public transportation.  (R. at 396.)  Dr. Sampson concluded that Plaintiff was able to meet the demands of simple routine work with limited social interaction.  (R. at 398.)  Therefore, the ALJ fulfilled his duty to develop the record as he ordered a CE and had ample evidence to base his opinion upon.

VI.     CONCLUSION

Based on the foregoing analysis, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 10) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 12) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk file this Report and Recommendation electronically and forward a copy to the Honorable Henry E. Hudson with notification to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: September 4, 2013